*862 OPINION.
Siefkin :[1]
The issues involved in this proceeding are primarily questions of fact. Numerous witnesses testified on behalf of the petitioner and the respondent and the testimony to a large extent is directly in conflict. After a careful consideration of all the testimony before us we have found the facts as set forth hereinbefore.
The respondent added to the petitioner’s reported net income for the year 1920 an amount of $350,000, holding that this amount represented loans personally made by the petitioner to the Metropolitan 5 to 50 Cent Stores, Inc. from monies received by him from the proceeds of “ escrow notes ” collected by him during 1920.
For the same reason he added to the petitioner’s reported income for that year the amount of $25,000 which was loaned to Stevens-Duryea, Inc. For the same reason he added to the petitioner’s reported income for the year 1921 an amount of $75,000 which was loaned to Stevens-Duryea, Inc.
Our view of the evidence is that the transactions with these companies were entered into by the petitioner and A. O. Eberhart in their individual capacities. From a consideration of all the evidence in the case we must conclude that the amounts which the petitioner received from H. W. Dubiske & Co. were income to him and the respondent’s determination with regard to these items in the years 1920 and 1921 will be upheld.
The petitioner admits that $19,500 of the $350,000 item was income to him but says that it was income in the year 1921. Since we have *863 held that the respondent did not err in including the amount of $850,000 in petitioner’s income for the year 1920, it follows that he did not err in refusing to put the amount of $19,500 in income of 1921 rather than 1920.
The respondent also added to the petitioner’s reported net income for the year 1920 an amount of $93,605.13 on account of the Iioyt and Little deal. The evidence discloses that the petitioner and A. O. Eberhart, in their individual capacities, each paid Hoyt and Little $75,000 for certain stock and commissions which were owing to Hoyt and Little from H. W. Dubiske & Co. The money which the petitioner paid to Hoyt and Little was from an amount of $150,000 which he had received from H. W. Dubiske & Co. The respondent has included in the petitioner’s income the full amount of $150,000, but has allowed as deductions against it one-half of the commission and a certain loss on a sale of stock by the petitioner. The basis for the respondent’s action is found in his determination that the transaction was a personal one by Dubiske and Eberhart. We conclude from the evidence that it was such a transaction, in which each was equally interested. Only one-half of the sum of $150,000, therefore, is taxable to the petitioner. The respondent’s inclusion of $93,665.13 in petitioner’s income must be reduced by $75,000 taxable to Eberhart.
During the year 1920 H. W. Dubiske & Co. paid an amount of $17,120 in cash for class A common stock of the Dayton Rubber Manufacturing Co. The books of the company did not show to whom this payment was made. They show that a total of $75,189.38 was paid in 1920 in notes as a partial payment for 2,725 shares of class A common stock of the Dayton Rubber Manufacturing Co. at $33.87½ per share. The total purchase price of 2,725 shares of class A common stock at $33.87½ per share would be $92,309.38. The difference between this figure and the total amount of the notes paid would be $17,120, an amount which is exactly the same as the item in question here. As pointed out in our findings of fact, the petitioner sold 2,725 shares of stock of the Dayton Rubber Manufacturing Co. to EÍ. W. Dubiske & Co. for $92,309.38. From this we conclude that the payment by H. W. Dubiske & Co. of notes in the amount of $75,189.38 and cash in the amount of $17,120 was made to the petitioner. The petitioner, in his return for the year 1920, reported a profit of $15,500 upon this sale of stock to H. W. Dubiske & Co. for $92,309.38. It is our opinion that the amount of $17,120 was received by the petitioner, but we are unable to determine whether or not the respondent has already taken this into account in his determination. The deficiency letter shows that there was added to the net income shown in the petitioner’s brief of July 10, 1926, the amount of $17,120 described as follows: “(d) Payment *864 from H. W. Dubiske & Co. for Class A Dayton Stock in excess of payment of ‘ escrow notes ’ $1T,120.”
Upon the redetermination under Rule 50, the amount of $17,120 will be included in the petitioner’s income if it has not already been taken into account by the respondent.
For the year 1921 the respondent added to the reported income of petitioner an amount of $104,900 as payment by H. W. Dubiske & Co. of its own notes which petitioner held. The evidence discloses that $4,900 of these notes were paid in the year 1922, while the balance of $100,000 have not been paid. It follows that the respondent erred in including the amount of $104,900 in income of the petitioner for the year 1921.
At the hearing the respondent was granted leave to amend his answer to affirmatively allege that there was additional income to the petitioner in the year 1920 of $25,000 and in the year 1921 of $77,-334.89, representing the amounts which petitioner personally loaned to the U. S. Automotive Corporation. The only evidence that we have as to this item is the statement of the petitioner that the loans to the U. S. Automotive Corporation were made in the same manner as the other loans herein involved, and certain, work sheets of the revenue agent who made the investigation. The work sheets of the revenue agent were taken from the work sheets of an accountant who at one time audited the books of H. W. Dubiske & Co., but it was not clearly shown that this accountant prepared the returns of the petitioner for the years in question. The burden of proof as to this item is upon the respondent and he has failed to prove to our satisfaction that these amounts were income to the petitioner in the year alleged.
The petitioner alleges that respondent erred in asserting a 50 per cent penalty against the petitioner for each of the years 1920 and 1921.
Section 250 (b) of the Revenue Act of 1918 provides in part:
If the understatement is false or fraudulent with intent to evade the tax, then, in lieu of the penalty provided by section 3176 of the Revised Statutes, as amended, for false or fraudulent returns willfully made, but in addition to other penalties provided by law for false or fraudulent returns, there shall be added as part of the tax 50 per centum of the amount of the deficiency.
Section 250 (b) of the Revenue Act of 1921 provides in part:
* * * If any part of the deficiency is due to fraud with intent to evade tax, then, in lieu of the penalty provided by section 3176 of the Revised Statutes, as amended, for false or fraudulent returns willfully made, but in addition to other penalties provided by law for false or fraudulent returns, there shall be added as part of the tax 50 per centum of the total amount of the deficiency in tax. * ⅜ *
We have held that the petitioner, in his returns for the years 1920 and 1921, understated his income.
*865 The petitioner testified that in paying money to Stevens-Duryea, Inc., the Metropolitan 5 to 50 Cent Stores, Inc., and Hoyt and Little, he was acting on behalf of H. W. Dubiske & Co., the corporation, and that he used money which was advanced to him by H. W. Dubiske & Co. for the specific purpose of making those payments.
A. O. Eberhart, who, during the years in controversy, was employed by H. W. Dubiske & Co., and who was a party to the transactions in question with Stevens-Duryea, Inc., the Metropolitan 5 to 50 Cent Stores, Inc., and Hoyt and Little, testified that these were transactions by himself and the petitioner personally.
After considering all the testimony in the case we must conclude that the payments by H. W. Dubiske & Co. to the petitioner were income to him, that he knew they were income to him, and that, in failing to report them in his income-tax returns for the years 1920 and 1921, he fraudulently misrepresented his true income in his returns for those years, with intent to evade taxes.
The respondent’s assertion of the 50 per cent fraud penalty will be upheld, but such penalties should be adjusted in accordance with the adjustments of the deficiencies made necessary by our findings of fact and this decision.
Reviewed by the Board.

Judgment will be entered under Rule 50.

 This decision was prepared during Mr. Siefkin’s term of office.